## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UL LLC, a Delaware Limited Liability Company, | |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| 7111495 CANADA INC., d/b/a ARIZER, a Canadian Corporation, GREENLANE HOLDINGS, INC., a Delaware Company, GREENLANE HOLDINGS, LLC, a Delaware Limited Liability Company, WAREHOUSE GOODS LLC, a Delaware Limited Liability Company, and VAPE WORLD DISTRIBUTORS, a Canadian company. | |
| Defendants. | |

## COMPLAINT

Plaintiff UL LLC ("UL" or "Plaintiff") by and through its attorneys, brings this Complaint against Defendants 711495 Canada Inc., d/b/a Arizer ("Arizer"), Greenlane Holdings, Inc., Greenlane Holdings LLC, Warehouse Goods, LLC and Vape World Distributors (Greenlane Holdings, Inc., Greenlane Holdings LLC, Warehouse Goods, LLC, and Vape World Distributors a referred to collectively as "Greenlane") (all collectively "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.      This is an action for trademark infringement, counterfeiting, and unfair competition under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*, arising from Defendant's intentional, willful, and continuing infringement of UL's well-known certification and service marks, which UL has used continuously since at least 1906 in connection

1

with providing product testing and certification services. Defendants' willful infringement through its unauthorized use of UL's marks on Defendants' smoke shop products causes a likelihood of confusion in the marketplace, and has caused immediate and irreparable harm to UL and its certification and service marks, as well as to consumers. UL seeks, among other things, damages and an injunction prohibiting Defendants from its infringing use of the "UL" designation.

## UL AND DEFENDANTS

2.      UL is a Delaware limited liability company located and doing business at 333 Pfingsten Road, Northbrook, Illinois 60062. UL is an affiliate of the UL family of companies, which have tested, inspected, and certified products, and developed safety standards for over a century. Some of the services offered by UL include: inspection, advisory services, education and training, testing, auditing and analytics, certification software solutions, and marketing claim verification. Plaintiff UL owns the well-known UL-in-a-circle certification mark and variations thereof (the "UL Marks").

3.      711495 Canada Inc., d/b/a Arizer ("Arizer") is a Canadian corporation with a principal place of business at 391-55 Northfield Dr E, Waterloo, Ontario N2K 3T6, Canada. Upon information and belief, Arizer distributed, sold and offered for sale smoke and vapor shop products, including vaporizers and accessories, bearing counterfeit replicas of the UL Marks. On information and belief, Arizer sold, distributed and offered these products for sale throughout the United States, including through its online store at <arizer.com>. On information and belief, Arizer is both a wholesaler and retailer, and sells products to consumers throughout the United States, including in Illinois and this judicial district. On information and belief, Arizer ships its products to customers in the United States from a facility located in Plainfield, Illinois.

4.      Greenlane Holdings, Inc. is a Delaware corporation, with a principal place of

business at 1095 Broken Sound Parkway NW #300, Boca Raton, Florida 33487. On information and belief, Greenlane Holdings, Inc. bought products bearing counterfeit replicas of the UL Marks from Arizer as well as other manufacturers and distributors ("Infringing Products").[1] On information and belief, Greenlane Holdings, Inc. distributed, sold and offered for sale Infringing Products throughout the United States, including through online stores at <www.vapornation.com> and <www.vapeworld.com>. On information and belief, Greenlane Holdings, Inc. sells and distributes products, including Infringing Products, to distributors and retailers in Illinois and this judicial district.

     5.     Greenlane Holdings, LLC is a Delaware corporation, with a principal place of business at 1095 Broken Sound Parkway NW #300, Boca Raton, Florida 33487. On information and belief, Greenlane Holdings, LLC, bought Infringing Products from Arizer as well as other manufacturers and distributors. On information and belief, Greenlane Holdings, LLC sold and offered for sale Infringing Products throughout the United States, including through online stores at <www.vapornation.com> and <www.vapeworld.com>. On information and belief, Greenlane Holdings, LLC sells and distributes products to distributors and retailers in Illinois and this judicial district.

     6.     Warehouse Goods, LLC is a Delaware limited liability company, with a principal place of business at 1095 Broken Sound Parkway NW #300, Boca Raton, Florida 33487. On information and belief, Warehouse Goods, LLC bought Infringing Products from Arizer as well as other manufacturers and distributors. On information and belief, Warehouse Goods LLC sold and offered for sale Infringing Products throughout the United States, including through online stores at <www.vapornation.com> and <www.vapeworld.com>. On information and belief,

---

[1] "Infringing Products" includes every product sold by Defendants which bears a counterfeit UL mark, regardless of whether UL has discovered that particular infringing product yet.

Warehouse Goods, LLC sells and distributes products to distributors and retailers in Illinois and this judicial district.

7.      On information and belief, Vape World Distributors is a Canadian company having a principal place of business at 340 Ridgeway Drive, Mississauga, Ontario LL 0A2.  Vape World Distributors imported and attempted to import Infringing Products.  On information and belief, Vape World Distributors bought Infringing Products from Arizer as well as other manufacturers and distributors.  On information and belief, Vape World Distributors sold and offered for sale Infringing Products throughout the United States, including through online stores at <www.vapornation.com> and <www.vapeworld.com>.  On information and belief, Vape World Distributors sells and distributes products to distributors and retailers in Illinois and this judicial district.

8.      On information and belief, Greenlane Holdings, Inc., Greenlane Holdings LLC, Warehouse Goods LLC, and Vape World Distributors are affiliated companies. Greenlane Holdings, Inc., Greenlane Holdings, LLC, Warehouse Goods LLC, and Vape World Distributors are collectively referred to herein as "Greenlane."

9.      Arizer, Greenlane Holdings, Inc., Greenlane Holdings LLC, Warehouse Goods LLC, and Vape World Distributors are collectively referred to herein as "Defendants."

**<u>JURISDICTION AND VENUE</u>**

10.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1338(a) and (b) because the claims address federal questions concerning the Lanham Act, 15 U.S.C. § 1121, trademark infringement of federally registered trademarks pursuant to 15 U.S.C. § 1114, and federal unfair competition pursuant to 15 U.S.C. § 1125(a).

11.      The Court has supplemental jurisdiction over the claims arising under the laws of

the State of Illinois, pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

12.    This Court has personal jurisdiction over Arizer because Arizer has transacted business in the State of Illinois, made contracts substantially connected with this State, and committed tortious acts within, and directed to, this State.  Particularly, UL's claims for trademark infringement, counterfeiting, and unfair competition arise from harm sustained in the State of Illinois, including, on information and belief, through the sale of Infringing Products to customers located in Illinois through Arizer's online store.  Upon information and belief, Arizer has purposefully directed activity at the State of Illinois by transacting business within the State of Illinois, including by shipping products to United States consumers from a facility located in Illinois.  On further information and belief, Arizer is causing tortious injury in the State of Illinois by acts or omissions outside of the State of Illinois.  Arizer has also directed its tortious activity at UL, which is located in Illinois and suffers direct harm in Illinois as a result of Arizer's actions.

13.    This Court has personal jurisdiction over Greenlane (including each of the "Greenlane" entities described above) because Greenlane has transacted business in the State of Illinois, made contracts substantially connected with this State, and committed tortious acts within, and directed to, this State.  Particularly, UL's claims for trademark infringement, counterfeiting, and unfair competition arise from harm sustained in the State of Illinois, including, upon information and belief, through the sale of Infringing Products to customers located in Illinois. On information and belief, Greenlane has purposefully directed activity at the State of Illinois by transacting business within the State of Illinois, including by selling Infringing Products to retailers and other distributors located in Illinois.  On further information and belief, Greenlane is causing

5

tortious injury in the State of Illinois by acts or omissions outside of the State of Illinois, which are directed at UL, which is located in Illinois and suffers injury in Illinois as a direct result of Greenlane's actions.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred and are occurring in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     UL'S VALUABLE RIGHTS**

15.     Founded in 1894, the UL family of companies is one of the oldest certification organizations in the United States.  The UL family of companies have tested, inspected, and certified products as well as developed safety standards for over a century.

16.     UL's services include testing and certifying that representative samples of products satisfy applicable safety standards and providing follow-up testing and inspection services to confirm that manufacturers are in compliance.

17.     UL is a global independent safety science company offering certification, validation, testing, inspection, advising, training, and auditing services for a variety of industries around the globe.

18.     UL owns the well-known UL-in-a-circle certification mark ⓤ and variations thereof (the "UL Certification Marks").  UL also owns the service mark UL (the "UL Service Mark").

19.     UL has been providing testing reports and certifying products that conform to UL's Standards for Safety since at least 1906.  Since at least 1906, UL, including its affiliates and predecessors, have continuously used the UL Service Mark in interstate commerce.

6

20.     UL, including its affiliates and predecessors, has been testing products and authorizing use of the well-known UL Certification Marks on products that conform to UL's Standards for Safety in interstate commerce in the United States since at least 1937. UL's authorized customers have been using the UL Certification Marks on products offered for sale and distributed in interstate commerce since 1937.

21.     UL serves all members of the general public, including, but not limited to, consumers, manufacturers, suppliers, retailers, vendors, trade groups, industry associations, regulatory bodies, and governmental entities.

22.     UL's thousands of authorized customers have used UL's well-known UL Certification Marks on billions of household, consumer, commercial, and industrial products including refrigeration equipment, lighting products, cable, wiring, building materials, life safety vests, batteries and power packs for computers and consumer electronics, traffic signals, sprinklers, cash registers, and many more.

23.     Over the past century, UL, including its affiliates and predecessors, has promoted recognition of its certification programs through a wide variety of marketing channels on a national, regional, and local basis, including but not limited to television, radio, consumer and trade newspapers, consumer and trade magazines, industry trade journals, promotional literature, brochures, direct mail, email campaigns, and its interactive websites and webpages such as <ul.com> and <safetysmart.com>. UL also promotes its UL Certification Marks and the UL Service Mark through its participation in standards development activities, follow-up conformity assessment and inspection services, community involvement, and safety science research.

24.     As a result of UL's extensive use of the UL Service Mark to promote its certification programs, including standards development activities, follow-up conformity

assessment and inspection services, community involvement, and safety science research, the UL Service Mark and the UL Certification Marks have attained a national and global reputation for technical expertise and integrity and have become symbols of trust and objectivity.

25.     The UL Service Mark and the UL Certification Marks are well-known and recognized by the general public, as well as by members of local, state and federal government regulatory bodies and industry trade associations, as marks indicating testing, inspection, validation, certification, training, advising, and auditing services originating with UL.

26.     The UL Service Mark and the UL Certification Marks are renowned among the general public as symbols of UL's testing, inspection and certification services originating with UL, and have been renowned since long before Greenlane began engaging in the conduct alleged in this Complaint.

27.     UL has duly and properly registered the UL Service Mark and the UL Certification Marks in the United States Patent and Trademark Office ("USPTO") on the Principal Register. UL owns the following federally registered marks, among others.  Copies of these registrations, or their corresponding USPTO website pages, are attached as Exhibits 1 through 3.

| Mark | Reg. No. | Exh | Type |
|------|----------|-----|------|
| UL | 782,589 | 1 | Certification Mark |
| UL | 2,391,140 | 2 | Certification Mark |
| UL | 4,201,014 | 3 | Service Mark |

28.     The federal trademark registrations referenced above are valid and subsisting, and provide conclusive evidence of the right of UL to use the UL Service Mark and authorize the use

8

of the UL Certification Marks in commerce.

29.     UL certifies the products of others in a variety of industries (the "Certification Services") under its UL Certification Marks (Exhibits 1-2), and offers educational, business advisory, product safety testing, and public safety services (the "UL Services") under the UL Service Mark (Exhibit 3).

30.     Use and registration of the UL Certification Marks and the UL Service Mark establish that UL has senior trademark rights in the UL Certification Marks and the UL Service Mark, and consequently there is no question of priority of rights, as such priority belongs to UL.

31.     UL's United States Trademark Registrations referenced above are incontestable under 15 U.S.C. § 1115(b).  As such, UL's incontestable federal trademark registrations confer exclusive use of the UL Certification Marks and UL Service Mark throughout the United States in connection with the UL Certification Services.

32.     UL has extensively used the UL Service Mark and has advertised, promoted, and offered the UL Services under the UL Service Mark in interstate commerce through various channels of trade.  As a result, the customers and potential customers of UL, and the public in general, have come to know and recognize the UL Service Mark as identifying the UL Services as services of the highest quality offered by UL, and associate the UL Service Mark with the UL Services.  UL has thus built up extensive and invaluable goodwill in connection with the sale of its services offered under its UL Service Mark.

**B.     UL'S PRODUCT CERTIFICATION PROCESS**

33.     Manufacturers may seek UL certification and listing in the UL certification directory by submitting representative samples for evaluation and/or testing.  UL will examine these representative samples to determine whether they comply with the applicable safety,

performance or other standards.

34.      If the representative samples comply with the applicable standard, and the manufacturer has adequate procedures in place to ensure that its production runs will be consistent with those representative samples, UL may authorize the manufacturer to affix the UL Certification Mark to that product and to advertise that product as being UL Certified.

35.      When a manufacturer's product has been found eligible for UL certification, the product is subject to UL's follow-up services whereby representatives of UL will make random, unannounced visits to the factory a few times per year to audit the means the manufacturer uses to determine the product's continued compliance with UL's requirements ("Follow-Up Services"). The manufacturer's use of the UL Certification Mark is the manufacturer's representation that the product is in compliance with UL's requirements and subject to UL's Follow-Up Services.

## C. DEFENDANTS' WRONGFUL CONDUCT

36.      Electronic cigarettes and vaporizers have become popular consumer items in the past decade.  Alongside their increasing popularity, reports of electronic cigarettes and vaporizers catching on fire have also increased.[2]  Unsafe electronic cigarettes and vaporizers have exploded *in customers' mouths* and have *killed* at least two people.[3]

37.      In 2017, UL released a safety standard UL 8139 to specifically evaluate the safety, heating, battery, and charging systems for electronic cigarettes and vaporizers, for electrical and fire hazards.  UL has been working with several electronic cigarette manufacturers to certify products that meet this standard.  Unfortunately, manufacturers and distributors like Arizer and

---

[2]  *See,  e.g.*,      https://www.fda.gov/tobaccoproducts/labeling/productsingredientscomponents/ucm539362.htm; https://www.news10.com/news/local-news/local-middle-school-evacuated-due-to-e-cig-explosion/1852125423;  and https://www.washingtonpost.com/health/2019/02/05/vape-pen-kills-man-after-exploding-his-mouth/.
[3] "The incidents involving severe injuries occurred while the e-cigarette device was in the victim's mouth, in very close proximity to their face, in a pocket.  This inherent intimacy with the device is what makes the e-cigarette a hazard unique among consumers products." *Id.*

Greenlane have been claiming their products are certified by UL when, in fact, they are not.

38.     On information and belief, because the highly publicized safety issues related to electronic cigarettes and vaporizers, many unscrupulous manufacturers responded to this negative press by falsely claiming that their electronic cigarettes, vaporizers, and related accessories, were "UL Certified."

39.     Arizer is among those manufacturers that began affixing a mark that is identical to or substantially indistinguishable from the UL Certification Marks (the "Counterfeit Mark").

40.     Greenlane purchased products from Arizer as well as and other manufacturers and distributors that contained the Counterfeit Mark.   On information and believe, Greenlane specifically looked for the UL mark because it would give its customers and consumers a (false) sense of safety.

41.     Defendants used or are using the Counterfeit Mark to falsely suggest that their goods are certified by UL.  Specifically, Defendants have used or are using a Counterfeit Mark on several different types of products, including electronic cigarettes and vaporizers. The Infringing Products have been offered for sale by Defendants nationwide through Defendants' websites via online ordering, and through nationwide distribution to retail stores.

42.     Representative samples of Defendants' unauthorized use of the Counterfeit Mark on some products are shown below and attached as Exhibit 4:






43.   While the products pictured above are Arizer products, Greenlane has distributed

Infringing Products from other manufacturers, including at least AFG, KandyPens, and DaVinci,

and potentially other manufacturers.  Further, while UL has reached settlement agreements with

AFG and KandyPens, the fact that Greenlane distributed Infringing Products from a several different manufacturers demonstrates a pattern of willful disregard for UL's trademark rights – as well as its willful disregard for the safety of consumers.

44.     Greenlane has consistently refused to accept any responsibility for its distribution of millions of dollars of products bearing the Counterfeit Mark.  There is no genuine dispute that Greenlane has sold millions of dollars of products bearing counterfeit UL marks, and there is strict liability for selling counterfeit goods under U.S. law.  Greenlane could have easily avoided selling millions of dollars of goods bearing counterfeit UL marks by checking UL's publicly-available online database and comparing the information found there to the information provided by the manufacturers selling products to Greenlane.  Greenlane made no effort to do so, at least in 2017 and 2018.  Accordingly, while Greenlane consistently attempts to shift blame to its suppliers, Greenlane should have known better (and, on information and belief, did know better) than to simply accept the markings on its products as genuine.

45.     Each of the Infringing Products bears a UL Certification Mark representing to customers that Defendants' products are certified by UL, when in fact they are not.

46.     Defendants' use of the Counterfeit Mark is identical to and confusingly similar to the UL Certification Marks in appearance, sound, meaning, and commercial impression.

47.     Defendants' use of the Counterfeit Mark falsely suggests that the Defendants' goods have been authorized or certified by UL.

48.     Defendants' use of the Counterfeit Mark trades off the goodwill of the UL Service Mark and UL Certification Marks and is without permission or license from UL.

49.     Defendants advertise and sell their goods in commerce using the Counterfeit Mark.

50.     Defendants' goods associated with the Counterfeit Mark have not been certified by

13

UL as complying with any safety requirements, and as such, may place the health and safety of the user at risk.

51.     Defendants' infringement has at all times been knowing and willful.

52.     Defendant Arizer was on constructive notice of the UL Certification Marks and the UL Service Mark by virtue of their federal registration.  Arizer deliberately placed the UL marks on their products (or directed their manufacturer to place the UL Marks on their products) and misrepresented the products as being UL certified.  Arizer knew that it never asked UL for permission to use any of the UL Marks, and knew it had no authority to place UL Marks on its products, or to direct someone else to place UL Marks on its products.  Arizer knew that UL never authorized Arizer to make any use of the UL Marks.  Arizer nevertheless used the UL Marks in association with their electronic cigarette, vaporizers and other products.

53.     Arizer and Greenlane were caught using counterfeit UL Marks at least as early as December 2017 when U.S. Customs and Border Protection ("CBP") seized some of Arizer's Infringing Products.  A copy of the notice sent to UL regarding this seizure is attached as Exhibit 5.  Despite this knowledge, Arizer and Greenlane continued selling and distributing Infringing Products.

54.     Arizer and Greenlane were caught using counterfeits of the UL Marks again in January 2018 when CBP seized another shipment of Infringing Products.  A copy of the notice sent to UL regarding this seizure is attached as Exhibit 6. Despite this, Arizer and Greenlane continued selling and distributing Infringing Products.  Particularly, Arizer kept distributing Arizer products bearing Counterfeit Marks, and Greenlane kept distributing at least Arizer, AFG, Kandypens, and DaVinci products bearing Counterfeit Marks.

55.     UL issued another warning to Arizer on June 29, 2018, when UL sent Arizer a letter

14

demanding that Arizer immediately and permanently cease and desist from any further importing, exporting, manufacturing, purchasing, selling, offering for sale, distributing and advertising of any and all products bearing UL marks that have not been tested and certified by UL. A copy of that letter is attached as Exhibit 7. On information and belief, Arizer made Greenlane aware of this letter.

56. On July 19, 2018, Arizer falsely claimed they first became aware of their infringement of the UL marks in March 2018, and falsely claimed they had ceased use of the UL marks on their product packaging as of April 2018. A copy of that letter is attached as Exhibit 8. On information and belief, Greenlane was aware of Arizer's letter, and of the false nature of the claims made therein.

57. Contrary to Arizer's claims they had ceased unauthorized use of the UL marks in April 2018, UL's investigators purchased Arizer-branded products bearing counterfeit UL marks in May 2018, and CBP advised UL that further shipments of Arizer branded products bearing counterfeit UL marks were entering the United States as late as July 2018.

58. Despite information from both CBP and UL, Defendant Arizer and its distributors and retailers, including Greenlane, continued to distribute, offer for sale, and sell electronic cigarettes, vaporizers and other products bearing Counterfeit Marks.

59. On information and belief, despite warnings from both CBP and UL, Arizer and Greenlane made no attempt to cease any pending shipments of Arizer branded products bearing counterfeit UL marks to the U.S., or to recall any Arizer branded products bearing counterfeit UL marks from their distributors and retailers.

60. On information and belief, Arizer knew or had reason to know of the UL Certification Marks and the UL Service Mark at the time Arizer commenced use of the Counterfeit

Mark.

61.     On information and belief, at least as recently as 2018 Greenlane had *never* verified whether *any* of its suppliers had actually been authorized to apply UL Marks to their products.  At all times, Greenlane could have reviewed information available in UL's online public database, or could have simply called UL, to confirm that the products it was selling were actually certified. Greenlane never did so, even though it had reason to believe the marks were not genuine.

62.     Greenlane has demonstrated a pattern of willful disregard of UL's certification marks.  Despite knowing that counterfeit UL Marks were a rampant problem in the vaporizer industry, Greenlane did not take appropriate steps to ensure the products it was selling bearing UL Marks in fact had genuine UL Marks.

63.     On information and belief, both Arizer and Greenlane sold products which had other false, fraudulent, or counterfeit certification marks, such as FCC, RoHS, and CE marks. Particularly, Arizer and other manufacturers applied these marks to their products without any regard to whether the products actually complied with these specifications, and Greenlane happily sold these products with false and misleading certifications.

64.     On information and belief, Arizer intentionally adopted the counterfeit UL Marks so as to create consumers confusion and traffic off of UL's reputation and goodwill under the UL Certification and UL Service Mark.

65.     On information and belief, Greenlane learned that vaporizer products bearing counterfeit UL Marks were a problem in the vaporizer industry at least as early as December 17, when it learned U.S. Customs and Border Protection had detained Arizer products.

66.     On information and belief, despite receiving this information from CBP, Greenlane made no effort to inspect the rest of its inventory for counterfeit UL Marks.  Had Greenlane done

16

so, it would have discovered additional products which bore counterfeit UL Marks.

67.     UL sent Greenlane a letter dated March 28, 2019 demanding that Greenlane cease and desist from any further importing, exporting, manufacturing, purchasing, selling, offering for sale, distributing, and advertising of any and all products bearing UL Marks that have not been tested and certified by UL, including products supplied by AFG Distribution, Inc. and Arizer. A copy of that letter is attached as Exhibit 9.

68.     After receiving that letter, Greenlane did not make adequate efforts to inspect its inventory for other products bearing counterfeit UL Marks. Had Greenlane done so, it would have discovered additional products, including Kandypens, Inc., and Organicix, LLC / Davinci products which bore counterfeit UL Marks.

69.     Later, UL informed Greenlane that Kandypens products sold and distributed by Greenlane *also* bore counterfeit UL Marks. Once again, Greenlane made no immediate effort to inspect its inventory for other products bearing counterfeit UL Marks. Had Greenlane done so, it would have discovered additional products which bore counterfeit UL Marks, including the Organicix / Davinci products. On information and belief, there are yet additional products bearing Counterfeit Marks that were being sold by Greenlane at that time.

70.     At all relevant times, Greenlane could have implemented reasonable due diligence procedures to ensure the products it was importing, selling, offering for sale, and distributing bore genuine UL marks. On information and belief, Greenlane did not have adequate procedures in place when it learned of products bearing counterfeit UL marks the first, second, or third time. On further information and belief, Greenlane never implemented adequate due diligence procedures.

71.     On information and belief, Greenlane first inspected its inventory for UL Marks on mid-2019. Greenlane identified additional products bearing UL marks, but did not take adequate

steps to determine whether those marks were genuine. Greenlane continued selling those products without having adequately confirmed whether the marks are genuine.

72.     On information and belief, Greenlane purposely and willfully did not inspect its inventory so that it would not discover other products bearing counterfeit UL marks.

73.     On information and belief, Greenlane intentionally continued selling products bearing a Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and UL Service Mark.

74.     Greenlane and Arizer have also behaved willfully in responding to UL's attempts to resolve this matter short of litigation. Arizer provided a number of statements regarding the quantity of products bearing counterfeit UL Marks sold, the distribution of those products, and its efforts to mitigate the distribution of those products which were misleading and/or incomplete. When asked to provide information regarding *all* products bearing UL marks in its inventory, Greenlane provided only a tiny handful of documents, refused to provide sourcing information necessary to authenticate the UL marks on a product, and attempted to pass off "profits" as "sales." Further, what little information Greenlane *has* provided strongly conflicts with the (lesser) sales figures Arizer has provided. UL has given both parties several opportunities to reach a good-faith resolution of this matter short of litigation, but both parties' ongoing refusal to provide full disclosure of the scope of their infringing behavior, and ongoing refusal to accept responsibility for their actions, has rendered this action necessary.

## COUNT ONE

### (Federal Trademark Infringement – 15 U.S.C. § 1114)

75.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

18

76. Defendants' Counterfeit Mark is identical to or substantially indistinguishable from the UL Certification Marks and UL Service Mark in appearance, sound, meaning, and commercial impression, such that the use thereof is likely to cause (i) confusion, mistake, and deception as to the certification of Defendants' products, (ii) the public to be confused, deceived, and to assume erroneously that Defendants' products have been certified by UL or that Defendants are in some way connected with, licensed, authorized, certified by, or affiliated with UL, and (iii) irreparable injury and damage to UL and to the goodwill and reputation symbolized by the UL Certification Marks and the UL Service Mark.

77. Likelihood of confusion is enhanced by the fact that the UL Certification Marks and the UL Service Mark are strong, well-known, and entitled to a broad scope of protection.

78. Likelihood of confusion is also enhanced by the fact that the Counterfeit Mark, the UL Certification Marks and the UL Service Mark prominently incorporate the key component "UL."

79. UL's United States Trademark Registrations set out above provide, at the very least, constructive notice to Greenlane of the rights of UL in and to the UL Certification Marks and the UL Service Mark.

80. Defendants' use of the Counterfeit Mark in connection with the Defendants' electronic cigarettes, vaporizers, and other products, is likely to cause confusion, mistake, or deception of consumers as to the authorization or certification of the goods, in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114.

81. Consumers are likely to purchase or engage Defendants' electronic cigarettes, vaporizers, and other products, being offered under the Counterfeit Mark, believing them to have been certified by UL, thereby resulting in a loss of goodwill and economic harm to UL.

82.     On information and belief, Defendants intentionally used the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.  Defendants have recklessly placed electronic cigarettes, vaporizers and other products into the marketplace which purport to have been tested by UL under appropriate safety standards, when in fact UL never performed any such testing on the products that Defendants are selling.

83.     UL is informed and believes, and alleges that Defendants have derived unlawful gains and profits from their infringing use of the Counterfeit Mark.

84.     The goodwill of UL's business under the UL Certification Mark and UL Service Mark is of great value, and UL will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of UL for which damage UL cannot be adequately compensated at law.

85.     UL has no control over whether the goods offered by Defendants meet the requirements of UL's safety standards.  Thus, the great value of the UL Certification Marks and the UL Service Mark is subject to damage by an entity it cannot control.

86.     Unless Defendants' are enjoined by this Court from so doing, UL will continue to suffer irreparable harm and injury to its goodwill and reputation.

87.     On information and belief, Defendants have engaged in acts of infringement, with knowledge of UL's exclusive rights in and to the UL Certification Marks and the UL Service Mark in connection with the Certification Services and the UL Services, and Defendants continue in such acts of intentional infringement, thus entitling UL to an award of treble damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b).

20

## COUNT TWO

### (Counterfeit of Registered Mark – 15 U.S.C. § 1114)

88.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

89.     UL owns valid and incontestable United States Trademark Registrations for its UL Certification Marks, as set out above.

90.     Well before any of Defendants' actions complained of herein were committed, UL had continuously used the UL Certification Marks throughout the United States in connection with its Certification Services.

91.     Defendants' use a non-genuine version of the UL Certification Marks and UL Service Mark that is identical to, or substantially indistinguishable from, the UL Certification Marks and UL Service Mark.

92.     The UL Certification Marks are registered on the Principal Register as a certification mark, and Defendants are intentionally using the Counterfeit Mark to falsely suggest that UL has certified Defendants' electronic cigarettes, vaporizers and other products.

93.     UL did not authorize Defendants' use of the Counterfeit Mark, and such unauthorized use of the UL Certification Marks and UL Service Mark is likely to confuse consumers into falsely believing that Defendants' electronic cigarettes, vaporizers and other products are certified by UL when, in fact, they are not.

94.     Defendants' use of the Counterfeit Mark without consent from UL was and is a willful and intentional infringement of UL's registered UL Certification Marks and UL Service Mark.

95.     Defendants have profited from their acts of infringement.  UL is entitled to recover

21

Defendants' profits arising from the infringement, any damages sustained by UL arising from said infringement, as well as the costs of this action.  UL also is entitled to an enhanced award of profits and/or damages to fully and adequately compensate it for Defendants' infringement.  At its election, UL also is entitled to statutory damages.

96.     Defendants have caused and, unless enjoined by this Court, will continue to cause irreparable injury to UL that is not fully compensable in monetary damages.  UL is therefore entitled to a permanent injunction enjoining and restraining Defendants from use of the UL Certification Marks and UL Service Mark or any other mark that is confusingly similar to the UL Certification Marks and the UL Service Mark.

### COUNT THREE
### (Federal Unfair Competition and False Designation of Origin and False and Misleading Representations – 15 U.S.C. § 1125(a))

97.     UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

98.     Defendants' use of the Counterfeit Mark constitutes unfair competition and a false designation of origin or false or misleading description or representation of fact, which is likely to deceive customers and prospective customers into believing that Defendants' electronic cigarettes, vaporizers, and other products offered for sale under Defendants' Counterfeit Mark have been certified by UL, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99.     Defendants' actions cause or are likely to cause confusion or mistake among the public as to the testing and certification of Defendants' electronic cigarettes, vaporizers and other products offered for sale bearing Defendants' Counterfeit Mark, or to confuse the public into believing that Defendants' electronic cigarettes, vaporizers and other products are otherwise affiliated, connected, associated with, or sponsored by UL, in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a).

100.    UL has no control over the nature and quality of Defendants' electronic cigarettes, vaporizers and other products offered for sale bearing the Counterfeit Mark.  Any failure, neglect, or default of Defendants in providing goods has reflected, and will continue to reflect, adversely on UL.

101.    On information and belief, Defendants intentionally adopted and used the Counterfeit Mark so as to create consumer confusion and traffic off of UL's reputation and goodwill under the UL Certification Marks and the UL Service Mark.

102.    UL is informed on, believes and alleges that Defendants have derived unlawful gains and profits from its infringement of the UL Certification Marks and the UL Service Mark.

103.    The goodwill of UL's business under the UL Service Mark is of great value, and UL will suffer irreparable harm should Defendants' infringement be allowed to continue to the detriment of the trade reputation and goodwill of UL for which damage UL cannot be adequately compensated at law.

104.    UL has no control over the quality of electronic cigarettes, vaporizers and other products offered by Defendants.  Thus, the value of the UL Certification Marks and the UL Service Mark is subject to damage by entities and individuals it cannot control.  Unless enjoined by this Court from doing so, Defendants will continue to engage in acts of unfair competition, false representation and designation, to the irreparable damage and injury of UL.

105.    On information and belief, Defendants have engaged in acts of unfair competition, false representation and designation, with knowledge of the exclusive rights of UL in and to the UL Certification Marks and the UL Service Mark, and Defendants continue in such acts of unfair competition and intentional false representation and designation, thus entitling UL to an award of

23

its actual damages, disgorgement of Defendants' profits, and attorneys' fees and costs in bringing and maintaining this action, pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## COUNT FOUR
### (Deceptive Trade Practices 815 ILCS 510/1 *et seq.*)

106.    UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

107.    The above-described conduct of Defendants constitutes deceptive trade practices in violation of 815 ILCS 510/1 *et seq*. insofar as it:

(a) passes off goods or services as those of another;

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade;

108.    Defendants' conduct constitutes deceptive trade practices in that their conduct in trade and commerce use and employ practices set out in Section 2 of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2, and/or constitute the use and/or employment of deception, fraud, false pretense, false promise, misrepresentation and/or the concealment, suppression and/or omission of a material fact, with an intent that others rely on the concealment, suppression or omission of such material act.

109.    Defendants have engaged in the above-described conduct willfully and deliberately

and with full knowledge of UL's rights.

110.    Defendants' aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to its reputation and goodwill.

111.    As the direct and proximate result of Defendants' statutory violations and other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

112.    Defendants have realized revenue and profits by virtue of their wrongful conduct that they otherwise would not have obtained and to which they are not entitled.

113.    UL has no adequate remedy at law for Defendants' wrongful conduct.

## **COUNT FIVE**
**(Consumer Fraud and Deceptive Business Practices 815 ILCS 505/1 *et seq.*)**

114.    UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

115.    The above-described conduct of Defendants constitutes deceptive business practices in violation of 815 ILCS 505/1 *et seq.* insofar as it:

(a) passes off goods or services as those of another;

(b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(d) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have; and

(e) represents that goods or services are of a particular standard, quality, or grade;

116.    Defendants' wrongful conduct stated above constitutes deceptive business practices in violation of 815 ILCS 505/2.

117.    Defendants have engaged in the above-described conduct willfully and deliberately and with full knowledge of UL's rights.

118.    Defendants' aforesaid conduct has caused and, unless and until such conduct is restrained and enjoined by this Court, will continue to cause great, immediate, and irreparable injury to UL, including irreparable injury to its reputation and goodwill.

119.    As the direct and proximate result of Defendants' statutory violations and other wrongful conduct, UL has suffered and will continue to suffer actual injury and the loss of money in an amount to be proven at trial.

120.    Defendants have realized revenue and profits by virtue of their wrongful conduct that they otherwise would not have obtained and to which they are not entitled.

121.    UL has no adequate remedy at law for Defendants' wrongful conduct.

## ALLEGATIONS OF DAMAGE COMMON TO ALL CLAIMS FOR RELIEF

122.    UL repeats and realleges each and every allegation contained in the preceding paragraphs as if set forth herein in full.

123.    UL has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Defendants' wrongful conduct.  Defendants will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of the business and reputation of UL.  UL's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

## PRAYER FOR RELIEF

WHEREFORE, UL respectfully prays the Court:

A.      Enter a judgment in favor of UL and against Defendants on all Counts alleged herein;

B.      Designate this action an exceptional case entitling UL to an award of its reasonable attorneys' fees incurred as a result of this action, pursuant to 15 U.S.C. § 1117;

C.      Issue permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from:

(i)      imitating, copying, or making any other infringing use of the UL Service Mark and the UL Certification Marks by the Defendants' Counterfeit Mark, and any other mark now or hereafter confusingly similar to the UL Service Mark or the UL Certification Mark;

(ii)      manufacturing, assembling, producing, distributing, offering for distribution, circulating, selling, offering for sale, advertising, importing, promoting, or displaying any simulation, reproduction, counterfeit, copy, or colorable imitation of the UL Service Mark, the UL Certification Marks, Defendants' Counterfeit Mark, or any mark confusingly similar thereto;

(iii)      using any false designation of origin or false description or statement that can or is likely to erroneously lead the trade or public or individuals to believe that any good has been provided, produced, distributed, offered for distribution, circulated, sold, offered for sale, imported, advertised, promoted, displayed, licensed, sponsored, approved, or authorized by or for UL, when such is not true in fact;

(iv)      using the names, logos, or other variations thereof of the UL Service Mark, the UL Certification Marks, or Defendants' Counterfeit Mark in any of Defendants' trade or

corporate names;

      (v)    engaging in any other activity constituting an infringement of the UL Service Mark, the UL Certification Marks, or of the rights of UL in, or right to use or to exploit the UL Service Marks and the UL Certification Marks; and

      (vi)    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (v) above;

      D.    Order Defendants, at their own expense, and subject to review by UL, to recall all products and marketing, promotional, and advertising materials that bear or incorporate Defendants' Counterfeit Mark, or any mark confusingly similar to the UL Certification Marks or the UL Service Mark, which have been manufactured, distributed, sold, or shipped by Defendants or on their behalf, and to reimburse all customers from which said materials are recalled;

      E.    Order Defendants to immediately produce and turn over to UL's counsel, all products, labels, signs, prints, packages, molds, plates, dies, wrappers, receptacles, and advertisements in their possession or under its control, bearing the Defendants' Counterfeit Mark, and/or any simulation, reproduction, copy, or colorable imitation thereof, and all plates, molds, matrices, and any other means of making the same;

      F.    Order Defendants to immediately supply UL with a complete list of entities to whom they distributed and/or sold products falsely bearing the UL Certification Mark as well as complete information regarding the sourcing and manufacture of Defendants' products bearing the Counterfeit Mark;

      G.    Order expedited discovery to commence immediately;

      H.    Order Defendants to publish notice to all customers or members of the trade who may have seen or heard of Defendants' use of Defendants' Counterfeit Mark, as well as to the

28

appropriate regulatory bodies, which notice shall disclaim any connection with UL and shall advise them of the Court's injunction order and of Defendants' discontinuance from all use of Defendants' Counterfeit Mark;

I.      Order Defendants to file with this Court and to serve upon UL within thirty (30) days after service upon Defendants of an injunction in this action, a written report by Defendants, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

J.      Order Defendants to pay the costs of corrective advertising and any public, regulatory or other notices issued by UL;

K.      Order Defendants to hold in trust, as constructive trustees for the benefit of UL, their profits obtained from their provision of the Defendants' electronic cigarettes and vaporizers offered for sale under Defendants' Counterfeit Mark;

L.      Order Defendants to provide UL a full and complete accounting of all amounts due and owing to UL as a result of Defendants' illegal activities;

M.      Order Defendants to pay the general, special, actual, and statutory damages of UL as follows:

(i)     UL's damages and Defendants' profits pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b) for Defendants' willful violation of the federally registered trademarks of UL; and

(ii)    If UL so elects, statutory damages of up to $2,000,000 per counterfeit mark, per type of product sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

N.      Order Defendants to pay to UL both the costs of this action and reasonable attorneys' fees incurred by UL in prosecuting this action, pursuant to 15 U.S.C. § 1117(a);

29

O.       Award UL its prejudgment interest; and

P.       Award such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

UL hereby demands a trial by jury of all triable issues raised by this Complaint.


DATED: September 9, 2020                    GREENBERG TRAURIG, LLP

                                            By: /s/ Cameron M. Nelson
                                                Cameron M. Nelson
                                                Jacqueline Brousseau
                                                Maja Sherman
                                                GREENBERG TRAURIG, LLP
                                                77 West Wacker Drive
                                                Suite 3100
                                                Chicago, IL 60601
                                                (312) 456-8400

                                                brousseauj@gtlaw.com

                                            *Attorneys for Plaintiff UL LLC*