# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UL LLC, | ) |
|     Plaintiff, | ) |
| | ) Case No. 20-cv-5308 |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| 7111495 Canada Inc., *et al.*, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Greenlane Holdings, Inc., Greenlane Holdings LLC, and Warehouse Goods LLC[1] (collectively "Greenlane Defendants" or "Defendants") moved to dismiss or, in the alternative, strike a portion of UL LLC's ("Plaintiff") complaint [15]. For the reasons explained below, Defendant's motion [15] is denied. The Greenlane Defendants' motion to stay discovery during the pendency of its motion to dismiss or strike [30] is denied as moot. The notice of motion date of August 5, 2021 is stricken, and no appearances are necessary. Counsel are directed to file a joint status report no later than August 17, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

---

[1] Plaintiff also brought this suit against Vape World Distributers, alleging that it is a company affiliated with the Greenlane Defendants. [1, at ¶ 8]. The Greenlane Defendants explain that "'Vape World Distributors' was improperly named, and the entity that UL apparently meant to sue has not yet been served." [16, at 1 n.1]. The docket reflects that summons issued as to Vape World Distributors on September 10, 2020, but no indication of service is on the docket.

I.  **Background**[2]

Plaintiff is a company that tests, inspects, and certifies products. [1, at ¶ 2]. It uses and owns the UL-in-a-circle certification mark ("UL certification mark"). [*Id.*]. Manufacturers seek UL certification by sending a sample of products for testing and, if the products meet the applicable safety and performance standards, Plaintiff authorizes the manufacturers to affix the UL certification mark to their products. [*Id.*, at ¶¶ 33–34]. Plaintiff maintains a publicly available online database of certified products. [*Id.*, at ¶ 44].

Defendant 7111495 Canada Inc., doing business as Arizer, ("Arizer") is a wholesaler and retailer of vaporizers and accessories, and it sells products bearing counterfeit UL marks. [*Id.*, at ¶ 3]. The Greenlane Defendants have distributed Arizer's infringing products. [*Id.*, at ¶ 43]. The Greenlane Defendants have also distributed infringing products from other manufacturers, including at least AFG, Kandypens, and DaVinci. [*Id.*]. Based on these actions, Plaintiff brought this suit, alleging (1) federal trademark infringement under 15 U.S.C. § 1114, (2) counterfeit of registered mark under 15 U.S.C. ¶ 1114, (3) federal unfair competition and false designation of origin and false and misleading representations under 15 U.S.C. ¶ 1125(a), (4) deceptive trade practices under 815 Ill. Comp. Stat. 510, and (5) consumer fraud and deceptive business practices under 815 Ill. Comp. Stat. 505. Plaintiff alleges that Defendants engaged in this conduct willfully and further contends that "the fact that Greenlane distributed Infringing Products from * * * several different manufacturers demonstrates a pattern of willful disregard for UL's trademark rights." [1, at ¶¶ 43].

This is not the first litigation between Plaintiff and the Greenlane Defendants. Relevant here, on July 20, 2019, Plaintiff filed a lawsuit assigned to Judge Ellis against Greenlane Holdings

---

[2] The Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

and manufacturers AFG Distribution, Inc., ("AFG") and Kandypens, Inc., ("Kandypens"), alleging the same five causes of action.[3] [16-2, at 35–82]. Plaintiff settled with AFG and Kandypens, and on February 12, 2020 and June 17, 2020, Judge Ellis entered consent judgments finding that AFG and Kandypens sold, distributed, and/or offered for sale products in packages that bear counterfeit UL certification marks. See Consent Judgment and Permanent Injunction at 2, *UL LLC v. AFG Distribution, Inc.*, 19-cv-2724 (N.D. Ill. Feb. 12, 2020), ECF No. 116; Consent Judgment and Permanent Injunction at 2, *UL LLC v. AFG Distribution, Inc.*, 19-cv-2724 (N.D. Ill. June 17, 2020), ECF No. 134.

On May 13, 2020, Plaintiff moved to amend to add facts about Arizer to the complaint. [*Id.*, at 78–82]. In its motion for leave to amend, Plaintiff explained that it had settled its claims against AFG and Kandypens and stated that "both of these settlements resolve UL's claims against Greenlane regarding the AFG and Kandypens products." [*Id.*, at 79]. In its reply brief in support of this motion, Plaintiff argued that it was "not reasserting settled claims with AFG and Kandypens" even though its proposed second amended complaint mentioned these manufacturers. [*Id.*, at 90]. Plaintiff explained that the allegations regarding AFG and Kandypens were "highly relevant to Greenlane's willfulness in selling other counterfeit products." [*Id.*].

Judge Ellis heard argument on Plaintiff's motion for leave to amend on June 30, 2020. [*Id.*, at 94]. Plaintiff's counsel again explained that its settlement agreements with AFG and Kandypens released claims against Greenlane with respect to its sale of AFG and Kandypens products. [*Id.*, at 96]. At oral argument, Judge Ellis expressed two main concerns regarding Plaintiff's motion. First, she noted that the operative complaint was "directed at the products that Kandypens and

---

[3] Because the facts regarding the prior proceeding recited here are "readily ascertainable from the public court record and not subject to reasonable dispute," the Court may take judicial notice of them without converting Defendants' motion to one for summary judgment. *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012).

AFG were manufacturing" and that adding Arizer products would be a "fairly fundamental shift" in the lawsuit. [*Id.*, at 98–99]. Plaintiff's counsel argued that the case had always included all infringing products, not just those of AFG and Kandypens. [*Id.*, at 102]. Judge Ellis rejected this argument, explaining that "the complaint was written in a way that Greenlane [was] on notice that* * * they're dealing with the Kandypens and AFG products that they've been selling." [*Id.*, at 116–117]. This conclusion underscores Judge Ellis's second concern, that because the settlement agreements with AFG and Kandypens covered Greenlane, there was nothing left in the case with respect to Greenlane, and therefore nothing left in the case at all. [*Id.*, at 99, 114]. Plaintiff's counsel responded that "we have a party in this case, Greenlane. Their claims against them are not entirely settled. They have a claim against them for counterfeiting, and they have a claim against them for willfulness." [*Id.*, at 114]. Counsel contended that the complaint was not "limited to products" and was instead about Greenlane's counterfeiting more generally. [*Id.*, at 114–15]. Plaintiff's counsel also stated, that "[w]ith respect to willfulness, willfulness is still at issue in this case. Greenlane is a party. They have not settled, and their level of willfulness is at issue in this case. So all these facts relating to Greenlane and willfulness, that hasn't been resolved and hasn't been adjudicated." [*Id.*, at 112].

Judge Ellis again rejected counsel's argument, stating that "[b]ecause the complaint as written deals with the AFG and Kandypens products, * * * the settlement with AFG and Kandypens releases the remaining claims as related to this lawsuit against Greenlane." [*Id.*, at 118]. Judge Ellis also stated that "the better course of action would be for UL to regroup and sue Greenlane in a new lawsuit covering these new products as opposed to amending the current lawsuit as it stands." [*Id.*, at 98]. She then entered a judgment in the case, which states: "The Court denies Plaintiff's motion for leave to file a second amended complaint and finds that the

4

settlement with AFG and Kandypens releases the remaining claims as related to this lawsuit against Greenlane." [*Id.*, at 121].

In their motion to dismiss in this current case, the Greenlane Defendants assert that the allegations of the complaint related to AFG and Kandypens should be dismissed or stricken because of res judicata or, in the alternative, because Plaintiff previously released these claims.

## II. Legal Standard

Defendants bring their motion under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint typically must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). In determining whether the complaint meets this standard, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth*, 507 F.3d at 618.

That said, the Court notes that res judicata and release are affirmative defenses, *Johnson v. Oystacher*, 2019 WL 4749913, at *3 (N.D. Ill. Sept. 30, 2019), and "[s]trictly speaking, the correct vehicle for determining an affirmative defense on the pleadings is an answer and a motion for judgment on the pleadings under Rule 12(c)," *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 632 (7th Cir. 2020). However, the outcome here would be the same under either 12(b)(6) or 12(c), so the Court proceeds to consider Defendants' motion. See *id.* (explaining that the defendant

should have made its res judicata argument in a 12(c) motion, but that the choice between Rules 12(b)(6) and (12)(c) had "no practical effect").

### III. Analysis

Defendants explain that they do "not seek dismissal of any allegations concerning the purportedly infringing Arizer products set forth in UL's complaint." [28, at 1]. Instead, Defendants argue that Plaintiff's complaint cannot include any allegations related to AFG or Kandypens products,[4] and they ask that the Court either strike these allegations or dismiss the complaint so that Plaintiff may replead without these allegations. Defendants assert the Court may do so for two reasons: (1) claim preclusion bars Plaintiff from bringing any claims related to AFG or Kandypens and (2) the settlement agreements in Judge Ellis' case released any allegations about AFG and Kandypens.

"In general, the doctrine of claim preclusion or res judicata bars a party from asserting a claim that has already been resolved in another lawsuit between the same parties or those in privity with them, and the doctrine reaches both claims that were actually asserted in an earlier lawsuit and those that could have been asserted but were not." *Russian Media Grp., LLC v. Cable Am., Inc.*, 598 F.3d 302, 310 (7th Cir. 2010). Claim preclusion requires three elements: "(1) judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action between both suits." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337,

---

[4] In fact, based on the paragraphs of the complaint Defendants ask the Court to strike, their request is broader than striking only allegations related to AFG or Kandypens. [See 16, at 6 (requesting that the Court strike paragraphs 43–44, 54, 61–62, 66–74, and footnote 1)]. Instead, Defendants ask the Court to strike allegations that suggest that any violation was willful, regardless of whether the allegation mentions AFG or Kandypens. For example, Defendants ask the Court to strike an allegation that Defendants never verified whether any of its suppliers had actually been authorized to apply UL certification marks to their products. See [16, at 6; 1, at ¶ 61]. Such a request is certainly overbroad given the reasoning underlying the disposition in the previous action: Judge Ellis denied Plaintiff's motion for leave to amend because the case in front of her covered only products sold by AFG and Kandypens, so her ruling certainly could not have had any preclusive effect on allegations related to non–AFG or Kandypens products.

338 (7th Cir. 1995). "A claim has 'identity' with a previously litigated matter if it emerges from the same 'core of operative facts' as that earlier action." *Id.*, at 338–39 (quoting *Colonial Penn Life Ins. Co. v. Hallmark Ins. Admin., Inc.*, 31 F.3d 445, 447 (7th Cir.1994)).

Based on these standards, the parties will not be able to relitigate claims or issues that were decided in the prior case. Thus, the precise allegations in the previous case and the resulting judgment must form the foundation of the analysis here. As explained above, after Plaintiff settled with AFG and Kandypens, Judge Ellis entered consent judgments finding that AFG and Kandypens sold, distributed, and/or offered for sale products in packages that bear counterfeit UL certification marks. And, following representations made by both parties, she determined that the settlement agreements "release[d] the remaining claims as related to [that] lawsuit against Greenlane." [16-2, at 121].

On these facts, Defendants contend that Plaintiff may not assert any facts about AFG or Kandypens. However, this is not the straightforward claim preclusion case suggested by Defendants' briefing. The result here would be apparent if Plaintiff were seeking to hold Defendants liable for the sale of AFG and Kandypens products, but that is not the case. Instead, Plaintiff seeks to hold Defendants liable for the sale of other products bearing counterfeit UL certification marks, using *evidence* related to AFG and Kandypens to demonstrate that those other violations were willful. [See, *e.g.*, 23, at 7]. Although Defendants cite to cases that each support a portion of its argument, they have not cited to any cases applying claim preclusion in an analogous factual situation. For example, Defendants cite to *Arrigo v. Link*, 836 F.3d 787, (7th Cir. 2016), [28, at 9], where the Seventh Circuit found that the denial of leave to amend can be a final judgment on the merits for claim preclusion purposes. In that case, the first court denied a plaintiff's leave to amend to add Title VII and ADA claims, and the Seventh Circuit upheld the

7

denial. *Arrigo*, 836 F.3d at 793, 798. When the plaintiff filed another suit alleging these two claims, the second court dismissed the suit on claim preclusion grounds. *Id.* The Seventh Circuit upheld the dismissal, reasoning that allowing the second lawsuit would "render meaningless [its] decision to uphold the district court's denial of [the plaintiff's] motion for leave to amend." *Id*. at 799. Here, in contrast, Judge Ellis, as the first court, explained that Plaintiff could bring a second suit alleging its claims based on non–AFG or Kandypens products. [See 16-2, at 98]. Further, *Arrigo* does not involve the same wrinkle as Defendants' motion here does. In short, claim preclusion does not apply here because Defendants are not attempting to preclude *claims*; instead, they seek to strike certain *facts supporting claims* it acknowledges are not precluded.[5] *Cf. Household Goods Carriers' Bureau v. Terrell*, 452 F.2d 152, 157–58 (5th Cir. 1971) (permitting admission of a letter into evidence during an antitrust case even though the letter was the subject of litigation in a previously settled libel suit); *Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *8 n.3 (D.N.J. Jan. 20, 2012) (relying on existence of previous default judgment against defendant to find that the defendant's violations were willful).

Defendants also argue that Judge Ellis already rejected Plaintiff's "willfulness theory" such that Plaintiff cannot now use this theory to justify inclusion of allegations related to AFG and Kandypens. [16, at 9–10; 28, at 3–5]. This argument suggests the application of issue preclusion more than claim preclusion. "Issue preclusion exists when: (1) the issue sought to be precluded is the same as that involved in the previous action; (2) the issue was actually litigated; (3) determination of the issue was essential to the final judgment; and (4) the party against whom issue preclusion is applied was fully represented in the previous action." *Loc. 25 S.E.I.U. Welfare*

---

[5] Defendants also argue that the Court should strike allegations related to AFG and Kandypens under Federal Rule of Civil Procedure 12(f). [16, at 12–14]. However, in support of this contention, Defendants rely on the same arguments they make to support their claim preclusion argument. Accordingly, the Court declines to strike any portion of Plaintiff's complaint.

*Fund v. Great Lakes Maint. & Sec. Corp.*, 55 F. App'x 373, 374 (7th Cir. 2002) (footnote omitted). Issue preclusion does not apply here because—at least as far as the record now before this Court indicates—Judge Ellis did not make a determination on Plaintiff's argument that a willfulness theory would permit factual allegations regarding AFG and Kandypens to persist after the settlement agreements. Instead, she rejected Plaintiff's argument that the case before her involved any products other than AFG and Kandypens products. And after rejecting this argument, she had no need to reach Plaintiff's willfulness argument because there were no longer any underlying claims for allegations about AFG and Kandypens products to support.

Finally, Defendant argues that the settlement agreements bar Plaintiff from relying on facts related to AFG or Kandypens. [16, at 11]. That may be the case. However, the final judgment in the prior suit concluded only that the settlement agreements "release[d] the remaining claims as related to [that] lawsuit against Greenlane." [16-2, at 121]. This conclusion does not indicate whether the settlement agreements bar using allegations related to AFG and Kandypens in the way Plaintiff attempts to do so here. The settlement agreements are not before the Court. Settlement agreements are a type of contract, see *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008), and without the ability to interpret the text of the agreements, the Court cannot determine their scope. *Cf. Equity Residential v. Kendall Risk Mgmt., Inc.*, 2005 WL 1026686, at *5 (N.D. Ill. Apr. 12, 2005) (not permitting a RICO claim based on pre-agreement conduct when the "terms of the Settlement Agreement clearly and unambiguously released 'any and all claims' against the Settled Defendants based on conduct prior to the Settlement Agreement").

In sum, the Court will apply principles of claim preclusion and issue preclusion in this case, and the Court will enforce the terms of any settlement agreement. However, at this early stage in the case, and with the limited materials available to the Court, the Court cannot say that either res

judicata doctrine applies, or that the terms of the settlement agreements prohibit any of the allegations in Plaintiff's complaint.

## IV. Conclusion

For the reasons above, Defendants' motion to dismiss or, in the alternative, motion to strike [15] is denied. The Defendants' motion to stay discovery during the pendency of its motion to dismiss or strike [30] is denied as moot. The notice of motion date of August 5, 2021 is stricken, and no appearances are necessary. Counsel are directed to file a joint status report no later than August 17, 2021 that includes (a) a proposed discovery plan and (b) a statement in regard to any settlement discussions and/or any mutual request for a referral to the assigned Magistrate Judge for a settlement conference. The Court will set further case management deadlines following review of the joint status report.

Dated: August 4, 2021

_____
Robert M. Dow, Jr.
United States District Judge